<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANN MARIE DAHLHAUS, | Civil Action No. 2:11-cv-04811-SDW |
| Plaintiff, | |
| v. | **OPINION** |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | August 10, 2012 |
| Defendant. | |

**Wigenton, District Judge.**

Before the Court is plaintiff Ann Marie Dahlhaus' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge James Andres' ("ALJ") denial of Plaintiff's claim for Social Security Disability benefits under 42 U.S.C. § 423(a)(1)(A). The Commissioner, pursuant to Local Civil Rule 9.1, seeks a judgment affirming the final decision that Plaintiff was not disabled and, therefore, not entitled to disability insurance benefits under the Social Security Act ("Act").

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Venue is proper under 28 U.S.C. § 1391(b).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, this Court **AFFIRMS** the ALJ's decision ("ALJ's Decision").

**FACTUAL AND PROCEDURAL HISTORY**

On October 26, 2007, Plaintiff filed an application for Social Security Disability benefits alleging that she was disabled as of June 23, 2006.  (Pl.'s Br. 1, R. at 101-103.)  Plaintiff's claims were initially denied on August 18, 2008 and again on November 13, 2008 after reconsideration. (R. at 56-60, 62-64.)  On January 6, 2009, Plaintiff requested a hearing before the ALJ.  (R. at 66-68.)  On April 1, 2010, a hearing was held before the ALJ.  (R. at 21.)  In the ALJ decision dated July 22, 2010, the ALJ concluded that Plaintiff was not disabled.  (R. at 28.)  On June 24, 2011, the Appeals Council denied Plaintiff's request for review.  (R. at 4.)  On August 19, 2011, Plaintiff filed the instant action seeking review of the ALJ's determination.  (*See* Dkt. No. 1.)

a.  *Medical History*

Plaintiff is forty-six years old and was forty-one at the time she filed for disability.  In 2003, Plaintiff underwent gastric bypass surgery.  (R. at 25.)  In 2005, Plaintiff's bypass was reversed due to adverse side effects.  (*See id*.)

On January 10, 2007, Plaintiff visited treating surgeon Dr. David Ward ("Dr. Ward"), complaining of abdominal pain.  (R. at 301.)  Examination revealed a ventral hernia for which Dr. Ward recommended surgical repair.  (*Id*.)  On April 14, 2007, a procedure was performed to repair the hernia, seemingly without complication.  (*See* R. at 352.)  In August 2007, Plaintiff revisited Dr. Ward, this time complaining of abdominal pain and depression.  (R. at 354.)  Dr. Ward determined that Plaintiff's abdominal pain was soreness from a pulled muscle.  (*Id.*)  He prescribed Zoloft for Plaintiff's depression.  (*Id*.)  On October 17, 2007, Dr. Ward noted that the results of an endoscopy showed a gastric ulcer near the point of Plaintiff's revised gastric bypass surgery.  (R. at 355.)   On November 8, 2007, Plaintiff presented herself to Morristown Memorial Hospital after one to two days of recurrent hematemesis.  (R. at 264.)  She was

2

diagnosed with upper gastrointestinal bleeding with no sign of orthostasis or exsanguination.  (R. at 265.)  On November 21, 2007, Plaintiff complained to Dr. Ward of pain by the incision over her previous hernia repair, and nausea.  (R. at 296.)  Dr. Ward assessed that Plaintiff's pains "just might be some scar tissue" and prescribed Reglan and Vicodin.  (*Id*.)  On October 15, 2008, Dr. Ward issued a letter in support of Plaintiff's disability application that summarized Plaintiff's medical history and described her current medical state.  (R. at 295.)  The letter provided that after Plaintiff's aforementioned ventral hernia operation, which was fixed in 2006, she had "done reasonably well except for some intermittent abdominal pains."  (*Id*.)  Additionally, the letter noted that she "had some gastric ulcers that had some hemorrhaging but [they were] treated with medical therapy and resolved."  (*Id*.)  Furthermore, Dr. Ward opined that, due to chronic pain, Plaintiff "could be considered for disability."  (*Id*.)

On October 22, 2008 and December 10, 2008, Plaintiff returned to Dr. Ward's office complaining of abdominal pain near her incision site.  (R. at 362-63.)  A CT scan of Plaintiff's abdomen was taken on April 23, 2009 to see whether a hernia near Plaintiff's incision site was causing her recurrent abdominal pain; however, a hernia was not discovered.  (R. at 363-64.)  At a follow-up appointment on May 6, 2009, Dr. Ward noted that while Plaintiff "always had some difficulties eating solids, [she] has maintained her weight and actually [] gained about 14 [pounds] since I last saw her."  (R. at 366.)  At this appointment, Dr. Ward did not note any deterioration in Plaintiff's status.  (*See id.*)  Dr. Ward suggested that iron infusions might be helpful and referred Plaintiff to Dr. Michael Martino ("Dr. Martino").  (*Id*.)  Plaintiff returned to Dr. Ward on July 22, 2009, still complaining of nausea, vomiting, and "food get[ting] stuck." (R. at 371.)  Dr. Ward referred Plaintiff to Dr. John Soriano ("Dr. Soriano"), and recommended that she have an endoscopy to determine whether she had a stricture that needed dilating.  (*Id*.)

3

An endoscopy performed by Dr. Soriano on August 11, 2009 revealed "moderate to severe chronic inflammation and basal cell hyperplasia consistent with reflux esophagitis[,]" but it provided no evidence of a stricture or other blockage.  (R. at 372.)  Dr. Soriano recommended Plaintiff receive an esophageal manometry and BRAVO[1] studies.  (R. at 377.)

On March 17, 2010, Dr. Ward completed a Multiple Intake Questionnaire constructed by Plaintiff's attorney.  (R. at 450.)  Dr. Ward diagnosed Plaintiff with chronic abdominal pain due to gastroparesis with little change over the last five years.  (*Id.*)  Dr. Ward listed abdominal pain and nausea as the symptoms associated with Plaintiff's diagnosis.  (R. at 451.)  Dr. Ward described Plaintiff's pain as epigastric in nature, constant in frequency, and as resulting from eating.  (R. at 451-52.)  Dr. Ward assessed Plaintiff as being able to sit for one hour, stand for one hour, and get up and move around every half hour.  (R. at 452.)  Dr. Ward determined that Plaintiff could lift five to ten pounds occasionally and carry up to five pounds occasionally.  (R. at 453.)  Dr. Ward marked "yes" as to whether Plaintiff's symptoms would increase if she were placed in a competitive work environment, but "no" as to whether Plaintiff's condition would interfere with the ability to keep her neck in a constant position.  (R. at 454.)  Dr. Ward also indicated that Plaintiff is functionally limited by depression, but that she is capable of low stress work.  (R. at 455.)

On July 24, 2009, prior to the endoscopy performed by Dr. Soriano, Plaintiff visited Dr. Martino of Passaic County Gastroenterology, complaining of hypertension.  (R. at 374-75.)  Dr. Martino assessed benign essential hypertension and esophageal reflux.  (R. at 375.)  On August 28, 2009, Plaintiff returned to Dr. Martino complaining of "mild dizziness since starting Avapro[.]"  (R. at 390.)  Dr. Martino's report recorded no abnormalities in the abdomen and

[1] BRAVO is a medical test that measures the pH level in the esophagus.  The 48-hour Bravo Esophageal pH Test, Cleveland Clinic, (http://my.clevelandclinic.org/services/esophageal_ph_test/hic_the_48-hour_bravo_esophageal_ph_test.aspx (last visited Aug. 7, 2012).

reaffirmed his prior diagnosis of benign essential hypertension and esophageal reflux.  (R. at 391.)  Dr. Martino also noted Plaintiff's iron deficiency.  (*Id.*)

Between September 29, 2009 and January 19, 2010, Plaintiff visited Dr. Nidal Matalkah ("Dr. Matalkah") at Wayne Hills Medical Associates.  (R. at 398-433.)  On Plaintiff's September 29th visit, she complained of "chest tightness, recent cough, peripheral edema, exercise limitation, hoarseness, orthopnea, scant, green sputum production and wheezing."  (R. at 398.)  Over that period, Plaintiff was diagnosed with and cured of acute bronchitis, chronic rhinitis, stridor, and acute frontal sinusitis.  (*See* R. at 400, 404, 419, 426, 430, 432.)  Also, Plaintiff was diagnosed with dyspnea, for which she was scheduled to have surgery on January 25, 2010.  (*See* R. at 433.)  She consistently suffers from asthma.  (*Id.*)

On September 13, 2006, Plaintiff visited orthopedic surgeon, Dr. William Matarese ("Dr. Matarese") complaining of pain in her right knee and lower back.  (R. at 434-35.)  Dr. Matarese noted that Plaintiff had a normal gait and station, normal muscle strength, normal sensation, signs of nerve and spinal cord tension-compression, and normal inspection/palpation and stability of her sacroiliac joint.  (R. at 434.)  With respect to Plaintiff's knee pain, Dr. Matarese diagnosed osteoarthritis in Plaintiff's right knee.  (*Id.*)  Dr. Matarese noted that eventually the knee would need replacement but advised that Plaintiff is too young for such a procedure and suggested that she continue Cortisone injections instead.  (R. at 435.)  On October 6, 2006, Plaintiff's return visit to Dr. Matarese revealed no change in status.  (R. at 437.)  On June 8, 2009, Plaintiff visited Dr. Matarese's office complaining of recurring pain in her right knee.  (R. at 438-39.)  Dr. Matarese determined that the condition in Plaintiff's right knee had worsened and ordered an MRI.  (R. at 439.)  The record reflects that Plaintiff's back condition had improved by this point.  (*Id.*)  Plaintiff's MRI, conducted on June 19, 2009, reflected a

"[s]ignificant partial tear or complete rupture of the anterior cruciate ligament[,] [a] [p]rominent tear involving the anterior horn and the body of the medial meniscus with peripheral displacement[, and] [p]rominent degenerative changes with prominent osteophytes."  (R. at 441.)  On December 2, 2009, Plaintiff returned to Dr. Matarese and complained of increased knee pain.  (R. at 445-46.)  Dr. Matarese assessed Plaintiff's back condition as lumbar degenerative disc disease.  (R. at 446.)

  b. *Psychological History*

  Beginning in March 2007, Plaintiff and her husband sought weekly therapy from Rosemary Cordasco ("Ms. Cordasco"), a licensed clinical social worker.  (R. 268-69.)  In a letter to the State of New Jersey Division of Disability Determination Services dated January 4, 2008, Ms. Cordasco stated that Plaintiff's husband reported that Plaintiff had changed completely after her surgery.  (R. at 268.) Plaintiff's husband further reported that Plaintiff "is unable to complete minor chores around the home, no longer wants to drive distances anywhere, and prefers not to leave the home when possible."  (*Id*.)  In addition, the couple "no longer had any intimacy" and Plaintiff "report[ed] feeling extremely tired and lethargic much of the time."  (*Id*.)  Ms. Cordasco opined that as a result of the surgery Plaintiff "experienced a trauma that has completely incapacitated her."  (*Id*.)  Furthermore, Ms. Cordasco assessed that "employment is not an option to [Plaintiff] despite the financial difficulties the family is having at this time."  (R. at 269.)

  c. *Plaintiff's Testimony*

  Plaintiff testified that she is unable to work because of complications resulting from her gastric bypass and reversal, including stomach problems that cause her to throw up seven to eight times per day.  (R. at 37, 39, 42.)  Plaintiff estimated that she is able to stand for thirty minutes without a problem and sit for fifteen due to pain in her back and her knee, and she claimed that

she is unable to work an eight hour workday.  (R. at 38, 39.)  Plaintiff also claims that her depression frequently affects her capacity for concentration and understanding.  (R. 40-41.)

    d.  *Medical Examiners' Reports*

On August 7, 2008, Plaintiff was examined by Social Security Administration Consultative Examiner Dr. Manju Gupta ("Dr. Gupta").  (R. at 273.)  Dr. Gupta noted that Plaintiff is an alert and oriented forty-two year old who suffers from a history of bleeding ulcer, depression, hernia, weakness and status post bypass.  (R. at 274.)  On August 11, 2008, Dr. Howard Goldbas ("Dr. Goldbas") completed a Residual Functional Capacity ("RFC") Report concluding that Plaintiff is capable of occasionally lifting and/or carrying 20 pounds, and frequently lifting and/or carrying 10 pounds.  (R. at 277-85.)  Dr. Goldbas concluded that Plaintiff is capable of standing and/or walking for at least two hours in an eight hour work day, sitting with normal breaks for a total of about six hours in an eight hour workday, and as having an unlimited ability to push or pull.  (R. at 278.)  Dr. Goldbas also noted a thirty-five pounds weight gain in Plaintiff in the last two to three years.  (*Id.*)  Dr. Goldbas recorded no manipulative, visual or communicative limitations, but marked that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat and hazards, such as machinery and height, based on Plaintiff's anemia.  (R. at 281.)

On August 6, 2008, Dr. Solomon Miskin ("Dr. Miskin") evaluated Plaintiff on behalf of the Social Security Administration.  (R. at 270-72.)  Dr. Miskin recounted Plaintiff's history of surgery, pain, and vomiting, as well as Plaintiff's feelings regarding her current physical state.  (R. at 270-71.)  In Dr. Miskin's medical examination he noted Plaintiff was a "neatly dressed, adequately groomed female who is alert and oriented in all spheres[,]" but whose "[m]ood is somewhat anxious, restless, guarded, fretful, dysphoric, and dysthymic."  (R. at 271.)

Ultimately, Dr. Miskin diagnosed Plaintiff with moderate severity of a major depressive disorder without psychotic features.  (R. at 272.)

On August 15, 2008, Dr. Patricia Farrell ("Dr. Farrell"), a psychologist, performed a psychiatric review.  (R. at 288.)  Dr. Farrell concluded that Plaintiff suffers from a depressive disorder.  (R. at 289.)  Within the category "B" criteria of functional limitations, Dr. Farrell recorded Plaintiff as being mildly restricted in activities of daily living with mild difficulties in maintaining social functioning.  (*Id*. at 290.)  Dr. Farrell also indicated that Plaintiff experiences moderate difficulties in maintaining concentration, persistence, or pace with no episodes of decompensation.  (*Id*.)

On August 15, 2008, Dr. Farrell also completed a Mental RFC form reflecting moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, and to perform activities within a schedule, or be punctual.  (R. at 291.)  Dr. Farrell indicated that Plaintiff appears moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  (R. at 292.)  She also found that Plaintiff is moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id*.)  Dr. Farrell further found that Plaintiff is moderately limited in her "ability to accept instructions and respond appropriately to criticism from supervisors."  (*Id*.)  Plaintiff's functional capacity assessment indicates that Plaintiff "drives, takes her children to school and picks them up, does household chores, has good relationships with relatives, cooks, shops, enjoys reading, [and] cares for her personal needs."  (R. at 293.)

> e.   *The ALJ's Decision*

The ALJ's Decision, issued July 22, 2010, found that even though Plaintiff "is not capable of unrestricted work at all exertional levels, the record as a whole does not substantiate the restrictive assessment by Dr. Ward finding that the claimant was unable to work[.]"  (R. at 27.)   Rather, the ALJ determined that Plaintiff "retains the residual functional capacity to perform work."   (*Id.*)   Furthermore, the ALJ found Plaintiff's nonexertional limitations immaterial, as such limitations "have little or no effect on the occupational base of unskilled light work" of which Plaintiff has been deemed capable.  (R. at 28.)   Thus, the ALJ found that Plaintiff is "not disabled."  (*Id.*)

**LEGAL STANDARD**

This Court exercises plenary review of all legal issues on an appeal of a decision by the Commissioner of Social Security.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give deference to the ALJ's findings if supported by substantial evidence. *Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal citation omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (internal citation omitted).

**DISCUSSION**

A person is disabled for purposes of Social Security Disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). A medically determinable impairment "is an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3). Substantial gainful activity is work that involves significant physical or mental activities and is done for pay or profit. *See* 20 C.F.R. § 416.972(a)-(b) (2012).

A five step sequential analysis is used to adjudicate Social Security Disability benefits claims. § 404.1520(a)(1); *see also Mays v. Barnhart*, 78 F. App'x. 808, 810 (3d Cir. 2003). If a claimant is found to be disabled or not disabled at any of the five steps, the analysis ends and a decision is made. § 404.1520(a)(4). In the first step, the ALJ examines whether or not the claimant is engaged in substantial gainful activity. §404.1520(a)(4)(i). If the claimant is, she is not disabled. *Id.* At the second step, the ALJ examines whether the claimant has a medically determinable impairment or combination of impairments that is expected to result in death, or has lasted or is expected to last for a continuous period of at least 12 months. § 404.1529(a)(4)(ii); § 404.1509. If the claimant does not, then she is not disabled. At the third step, the ALJ considers the severity of the claimant's impairment or combination thereof, and determines whether it is equivalent to one of the impairments listed in the Code of Federal Regulations. § 404.1529(a)(4)(iii). If it is not, the ALJ moves on to the fourth step, in which the ALJ considers the claimant's RFC and past relevant work. § 404.1529(a)(4)(iv). If the claimant is deemed fit to perform her past relevant work, the claimant is not disabled. *Id.* Otherwise, the ALJ moves on to the fifth step. At this final step, the burden shifts to the Commissioner of Social Security to establish, using the claimant's RFC, age, education, and work experience, that the claimant can perform other work activities that exist in significant numbers in the national economy. § 404.1529(a)(4)(v); § 404.1560(c)(1-2).

In the instant matter, the ALJ concluded that Plaintiff would be capable of performing "unskilled light work." (*See* R. at 24-28.) The claimant was deemed not disabled and denied receipt of Social Security Disability benefits. (R. at 28.)

Plaintiff argues that the ALJ erred because the ALJ: (1) did not "properly weigh the medical evidence" in rejecting Dr. Ward's functional capacity analysis; (2) did not "properly evaluate [Plaintiff's] credibility" by failing to "offer any logical reasons for finding [her] testimony not credible"; and (3) in error, relied on the Medical-Vocational Guidelines and did not use a vocational expert or similar evidence although Plaintiff's record demonstrated both exertional and nonexertional limitations. (Pl.'s Br. 12-24.)

The Commissioner has responded to each of Plaintiff's three contentions. First, the Commissioner argues that the "ALJ reasonably gave little weight to Dr. Ward's restrictive opinion, as it was not supported by his own findings and the other objective medical evidence of record." (Def.'s Br. 16 (citing Tr. 25-27).) Second, the Commissioner argues that there is substantial evidence in the record supporting the ALJ's determination that Plaintiff's subjective complaints were not "entirely credible to the extent alleged." (*Id*. at 18 (citing Tr. 24-26).) Finally, the Commissioner maintains that the Medical-Vocational Guidelines were appropriately relied on by the ALJ because "Plaintiff's depression did not significantly limit her capacity to perform simple work, *i.e.*, it did not impose any additional nonexertional limitations." (*Id*. at 21 (citing Tr. 23-27).) The five step sequential steps and the ALJ's analysis are discussed below.

a.   *Step One*

At step one, if the ALJ determines Plaintiff is engaged in "substantial gainful activity," disability benefits are denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520(b), 416.920(b).)

Here, the ALJ found that Plaintiff has not engaged substantial gainful activity since June 23, 2006.  (R. at 23.)

b.  *Step Two*

At step two the ALJ considers all of the medical evidence in the record to determine whether Plaintiff's medically determinable impairments are "severe."  20 C.F.R. § 416.929.  The ALJ also considers all symptoms to the extent they "can reasonably be accepted as consistent with the objective medical evidence, and other evidence."  *Id.*

In the instant matter, the ALJ found that Plaintiff suffered from two severe impairments: depression and gastric problems.  (R. at 23.)

c.  *Step Three*

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work."  *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x. 376, 379 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520(d)).  If Plaintiff's impairments satisfy a listing, Plaintiff is considered disabled and will be awarded benefits. *Knepp*, 204 F.3d at 85.

Here, the ALJ evaluated listing 5.00 and listing 12.04 of the "Listing of Impairments" guide.  (R. at 23.)  The ALJ concluded that neither Plaintiff's physical nor mental impairments meet nor medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.*)

The ALJ analyzed Plaintiff's mental impairment under paragraphs B and C of listing 12.04.  (*Id.* at 23-24.)  Under section 12.00 of the Listing of Impairments titled, "Mental Disorders," an evaluation of disability "requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on

13

[claimant's] ability to work, and consideration of whether these limitations have lasted or are expected to last for . . . at least 12 months." 20 C.F.R. Pt. 4, Subpt. P, App. 1. The ALJ evaluated Plaintiff's disorder under section 12.04, "affective disorders." (R. at 23.) Paragraphs B and C of section 12.04 "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity" and "must be the result of the mental disorder described in the diagnostic description." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00(A).[2]

The ALJ noted the findings from Dr. Farrell's report that Plaintiff experiences mild restriction in her daily living activities, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace. (R. at 23.) In addition, the ALJ noted that Plaintiff had not experienced any episodes of decompensation. (R. at 24.)

While acknowledging that the record establishes that Plaintiff suffers from depression, the ALJ concluded that the evidence in the record did not corroborate the proposition that depression severely limited Plaintiff's mental functioning. (Id.) The ALJ noted that there was "no intensive ongoing treatment for any mental impairment . . . no corroboration by a medical source that medication was not effective . . . [and] no reasonable medical basis demonstrat[ing]" limitation of daily activities. (Id.) Furthermore, Plaintiff reported participating in the following daily activities: driving, taking her children to school and picking them up, performing household chores, maintaining good relationships with relatives, cooking, shopping, reading, and caring for her personal needs. (Id.) Therefore, the ALJ found that the paragraph B criteria were not satisfied. (Id.) The ALJ also found that the evidence failed to satisfy the criteria in

---

[2] An impairment interferes with a claimant's ability to engage in substantial gainful activity if, under paragraph B of the listings, Plaintiff demonstrates marked limitations in at least two of the following categories: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Id. at § 12.04(B). "Marked" means the limitation must be more than moderate but less than severe. Id. at § 12.00(C). Or, if under paragraph C, claimant has a "[m]edically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and claimant experiences "[r]epeated episodes of decompensation, each of extended duration." Id. at § 12.04(C)(1).

paragraph C.   (*Id.*)   Thus, the ALJ concluded that Plaintiff did not suffer from a severe impairment such that a finding a disability would be required.

Next, when a plaintiff's medical impairment(s) does not meet or equal a listed impairment, the ALJ must then make a determination about the plaintiff's RFC based on the relevant medical and other evidence in the plaintiff's record.   20 C.F.R. § 416.920(e).   Here, considering all of the evidence in the record, the ALJ found Plaintiff "has the residual functional capacity to perform the narrow range of light work as defined in 20 CFR 404.1567(b) not involving more than simple tasks."

Plaintiff takes issue with the ALJ's evaluation of her mental impairment with respect to the severity of her nonexertional limitations.   This issue will be addressed in further detail at below and in subsequent steps.

> 1)  *The ALJ properly weighed the medical evidence*

Plaintiff argues that the ALJ "failed to properly weigh the medical evidence" when coming to his decision to deny benefits.   (Pl.'s Br. 12.)   First, Plaintiff submits that the ALJ "failed to adequately weigh the opinions from the board-certified treating surgeon, Dr. Ward.". (*Id.*)

The ALJ should accord great weight to a treating physician's reports, "especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).   However, "[a]n ALJ may reject a treating physician's opinion  . . . on the basis of contradictory medical evidence" so long as he provides reasons for his decision.  *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

In the instant matter, the ALJ rejected Dr. Ward's opinion that Plaintiff is unable to work and the ALJ supported his reasoning.  The ALJ noted that "[o]n October 15, 2008, Dr. Ward reported that despite [Plaintiff's] complications . . . she has done reasonably well."  (R. at 25.)  The ALJ explained that although Plaintiff had been experiencing abdominal pains and ulcers, both of these conditions had been treated with medical therapy and resolved. (*Id*.)  The ALJ found that nothing in the medical evidence demonstrated that "claimant had or continues to have any ongoing intensive medical treatment or any deterioration in her conditions."  (R. at 26.)  The ALJ highlighted Dr. Ward's more recent assessment indicating that "the only problem the claimant has is occasional vomiting and difficulty eating solids."  (*Id.* (citing Exhibit 19F).)  Furthermore, progress notes from Plaintiff's treating physician, Dr. Martino, from examinations of her upper abdomen from July of 2009 through September 2009, showed that the "abdomen was normal on visual inspection, abdominal auscultation revealed no abnormalities, and abdominal percussion was normal."  (*Id.*; *see also* R. at 324.)  In addition, the ALJ noted that Plaintiff "drives, takes her children to school and picks them up, performs household chores . . . cooks, shops, enjoys reading and cares for her personal needs."  (R. at 24.)

The ALJ's Decision is based on Plaintiff's medical history and the assessments of other treating physicians.  (*See* R. at 21-28.)  Dr. Ward's statement that Plaintiff's medical status has remained unchanged over a period of five years is in conflict with the evidence cited by the ALJ from Plaintiff's record.  (R. at 26.)  Therefore, the ALJ properly disregarded Dr. Ward's statement.

Plaintiff also asserts that the ALJ improperly found that the assessments of Dr. Gupta and the other non-examining State Agency Physicians were in conflict with Dr. Ward's statement. (*See* Pl.'s Br. 14.)  Plaintiff further alleges that the state examiners reviewed a marginal record

16

excluding all critical medical evidence. (Pl.'s Br. 16 (citing *Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008) (noting that a non-examining source's review of a limited medical record does not constitute substantial evidence).) This Court disagrees. Dr. Gupta's examination revealed present bowel sounds and chest, heart, neuromuscular, and extremity examinations all within normal limits. (R. at 273-74.) Dr. Gupta's evaluation did not reveal any of the limitations found in Dr. Ward's Multiple Impairment Questionnaire. (*Id.*, *see also* R. at 450-57.) As such, the ALJ properly found Dr. Gupta's examination in conflict with Dr. Ward's restrictive statement.

Plaintiff also asserts that the state examiner's determinations do not constitute substantial evidence because (1) Dr. Howard Goldbas' assessment occurred two years prior to the ALJ's Decision and (2) the ALJ improperly considered the state examiner's opinions in weighing the evidence against Dr. Ward's assessment. (Pl.'s Br. 15-16.) Plaintiff's assertions are without merit. First, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm's of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (finding that the ALJ properly relied on records that were "a few years old"). The Social Security regulations impose no limit on the amount of time that may "pass between a report and the ALJ's decision in reliance on it." *Id*. The Third Circuit has deemed six-year-old medical records substantial evidence and has permitted the ALJ to rely upon them. *Chandler*, 667 F.3d at 361 (citing *Hantranft v. Apfel*, 181 F.3d 358, 360-61 (3d Cir. 1999)). Therefore, the two-year lapse between Dr. Goldbas' assessment and the ALJ's reliance upon it is inconsequential to the substantiality of his assessment for evidentiary purposes.

Second, "[a]lthough the treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, . . . '[t]he law is clear that the opinion of

a treating physician does not bind the ALJ on the issue of functional capacity.'" *Id.* (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)) (internal citations omitted); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994) ("a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue"). The opinions of state agents merit significant consideration. *See Chandler*, 667 F.3d at 361. While the ALJ is not bound by the opinion of a state examiner, the examiner's opinion as to whether a claimant's impairment is "equivalent in severity to any impairment in the Listing of Impairments . . . must be received into the record as expert opinion evidence and given appropriate weight." *Id.*[3]  As such, this Court finds that the ALJ properly weighed the medical evidence in reviewing Plaintiff's medical history, assessments of treating physicians, and findings of the State medical examiners.

2)  *The ALJ properly evaluated Plaintiff's credibility*

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence."  *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529).   Section 404.1529(a) provides that "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably . . . produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled."  20 C.F.R. § 404.1529(a).  This requires the ALJ to weigh the medical evidence to determine whether claimant's alleged limitations "can reasonably be accepted as consistent with the medical . . . evidence."  *Id.*; *see also Hartranft*, 181 F.3d at 362

---

[3] C.F.R. § 404.1512 includes agent and examiner opinions in its definition of evidence for the purpose of making a disability determination. C.F.R. § 404.1512(b)(6) provides that evidence is anything anyone submits related to a Plaintiff's claim including "at the initial level of the administrative review process, . . . a State agency disability examiner['s] . . . initial determination alone . . . [and] opinions provided by State agency medical . . . consultants based on their review of the evidence in your case record."

18

("[T]his obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.").

In addition to the objective medical evidence, some factors relevant to evaluating a claimant's alleged symptoms include the claimant's daily activities, the type of medication taken to treat the symptoms and its effectiveness, other treatment a claimant has received for relief of symptoms, and other factors concerning limitations and restrictions due to the alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).  A claimant's complaints of pain should be given "great weight" only when supported by objective medical evidence, but may be disregarded if there exists contrary medical evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993) (citations omitted).

In the instant matter, however, the ALJ properly determined that the objective medical evidence and other factors of record do not corroborate Plaintiff's subjective symptomology. Plaintiff argues that the ALJ "failed to offer any logical reasons for finding [her] testimony not credible" and that her testimony was not afforded adequate weight.  (Pl.'s Br. 18.)  The ALJ points to the medical evidence and the record on a whole to support his finding.  For example, contrary to Plaintiff's assessment that she vomits seven to eight times per day and is unable to keep anything down if she eats, the ALJ noted that on September 3, 2008, Dr. Ward assessed that Plaintiff throws up "once [in] a while." (R. at 25.)[4]  Additionally, Dr. Ward noted that Plaintiff has "done reasonably well" after experiencing only "intermittent abdominal pains and gastric ulcers, which [were] treated with medical therapy and resolved." (*Id.*)  Furthermore, Dr. Ward's response to the Multiple Impairment Questionnaire does not refer to persistent vomiting as a source of Plaintiff's inability to work.  (R. at 26.)  The ALJ also properly considered Plaintiff's

---

[4] Plaintiff asserts that she suffers further nonexertional limits due to her propensity to vomit seven to eight times per day.  (*See* Pl.'s Br. 23.)

19

daily activities as evidence relevant to assessing the credibility of Plaintiff's subjective symptomology. *See* 20 C.F.R. § 404.1529(c)(3)(i).  Plaintiff's record reflects that she does, and is able to, drive, cook, shop, perform household chores, read, and care for her personal needs. (R. at 24.)  Pursuant to 42 U.S.C. § 406(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  For the foregoing reasons, this Court finds that the ALJ did support his reasoning for not crediting the persistence and limiting effects of Plaintiff's symptoms as credible with substantial evidence as required.

d.   *Step Four*

If the ALJ is unable to make a determination at the first three steps of the analysis, at step four the ALJ must determine whether Plaintiff has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(f).  If the ALJ finds that Plaintiff can still do the kind of work Plaintiff previously engaged in, Plaintiff is not disabled.

Here, the ALJ found that Plaintiff is unable to perform her past relevant work as a bus driver.  (R. at 27.)

e.   *Step Five*

Once the ALJ determines that Plaintiff does not have the RFC to engage in her past relevant work, the ALJ must evaluate Plaintiff's ability to adjust to other work by "considering [her] residual functional capacity and [] vocational factors of age, education, and work experience."  20 C.F.R. § 416.960(c)(1).  The ALJ must provide evidence demonstrating that other work exists in significant numbers in the national economy that Plaintiff can engage in.  20 C.F.R. § 416.960(c)(2).  If other work exists that the Plaintiff can perform, she is not disabled. *Id.*

20

In the instant matter, the ALJ relied on the medical-vocational rules and concluded that a significant number of jobs exist in the national economy that Plaintiff is capable of performing. The ALJ further explained that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work."  (R. at 28.)  As such, the ALJ found that Plaintiff is "not disabled."  (*Id.*)

       1)  *The ALJ's reliance on the Medical-Vocational Guidelines was sufficient*

Under 20 C.F.R. § 404.1568(a) unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  Courts have consistently held that the limitation, "simple tasks," is the equivalent of the ability to perform "simple duties" within the definition of "unskilled work."  *See Davis v. Astrue*, No. 08-928, 2009 WL 3241853, at *6 (W.D. Pa. Oct. 5, 2009); *see also Vuxta v. Comm's of Soc. Sec.*, 194 F. App'x. 874, 878 (11th Cir. 2006) ("a limitation to simple tasks is already contained within the unskilled limitation, and is not a limitation above and beyond that classification"); *Emery v. Astrue*, No. 1:11-CV-65, 2012 WL 1910090, at *15 (D. Vt. April 9, 2012) ("courts have held that the nonexertional limitations of simple tasks and avoidance of hazards do not significantly reduce a claimant's ability to perform unskilled work"); *Sensing v. Astrue*, No. 6:10-CV-03084, 2012 WL 1016581, at *6 (D.S.C. March 26, 2012) ("'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that . . . unskilled work sufficiently accounts for such limitations'" (quoting *Winschel v. Comm'r*, 631 F.3d 1176, 1180 (11th Cir. 2011))).

In *Davis v. Astrue*, the court found that application of the Medical-Vocational Guidelines, or grids is appropriate where the nonexertional limitations ascribed to a plaintiff by the ALJ limit

that plaintiff to unskilled work.  2009 WL 3241853, at *6.  "Limiting plaintiff to simple instructions and simple tasks does not erode the base of unskilled jobs that plaintiff could perform" because unskilled work involves "'little or no judgment to do simple duties that can be learned on the job[.]'"  *Id.* (quoting Commissioner's definition of unskilled work, 20 C.F.R. § 416.968(a)).

Here, the ALJ found that Plaintiff had moderate difficulties with regard to concentration persistence or pace.  (R. at 23.)  The ALJ concluded that these nonexertional difficulties limit Plaintiff to simple tasks and a narrow range of unskilled light work.  (R. at 28.)  Therefore, the ALJ did not err in applying the Medical-Vocational Guidelines.

Plaintiff argues that because the ALJ allegedly concedes that Plaintiff has moderate restrictions caused by nonexertional limitations, it was an error for the ALJ to apply the Medical-Vocational Guidelines as a framework for finding Plaintiff not disabled.  (Pl.'s Br. 21, 22.)  Plaintiff supports this argument by noting that the ALJ "did not simply restrict [her] to unskilled light work, but found her limited to only 'simple' tasks on the job[.]"  (Pl.'s Br. 23.)  However, the ALJ's RFC determination is adequately supported with evidence in the medical record.  Apart from one report submitted by Plaintiff's social worker, the ALJ noted that there is no indication that Plaintiff receives ongoing treatment for depression.  (R. at 24.)  The ALJ notes that "[a]lso, there is no corroboration by a medical source that medication was not effective or that medication caused any significant side effects."[5]  (*Id.*)

The ALJ also cites Plaintiff's description of her daily activities and refers to Dr. Farrell's report finding that Plaintiff only suffered from moderate limitations in her ability to carry out

---

[5] The ALJ noted that on September 3, 2008, Dr. Ward prescribed Vicodin to Plaintiff for her vomiting and muscle pain, and that on October 15, 2008, Plaintiff was doing reasonably well, except for some other complications for which Dr. Ward treated with medical therapy and was also resolved.  (R. at 25.)  Furthermore, the ALJ noted that Plaintiff was treated with steroid injections for the arthritis in her lower back and knee, and a "physical examination did not reveal any significant abnormalities."  (R. at 26.)

detailed instructions, maintain attention and concentration, and to perform activities within a schedule.   (R. at 23 ("with regard to persistence or pace, the claimant has moderate difficulties").)   The ALJ explains that "moderate" limitations in this respect do not qualify Plaintiff for disability pursuant to 20 C.F.R. §§ 404.1525, 404.1526.   (*Id.*)   In sum, the ALJ's determination that Plaintiff's nonexertional limitations still allow her to perform a range of light work involving not more than simple tasks, is well supported.

**CONCLUSION**

For the foregoing reasons, this Court **AFFIRMS** the ALJ's Decision.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
cc:      Parties

23